UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

YOHANNA M. PIMENTEL; and
CATHERINE J. MARTEL,

                          Plaintiffs,          1:10-CV-0616
                                               (GTS/CFH)
v.

MICHAEL MAGIN, sued in his individual
capacity; and NEW YORK STATE DEP'T
OF HEALTH,

                          Defendants.

-------------------------------------------------------------

APPEARANCES:                              OF COUNSEL:

BERGSTEIN & ULLRICH, LLP                  STEPHEN BERGSTEIN, ESQ.
  Counsel for Plaintiffs
15 Railroad Avenue
Chester, NY 10918

HON. ERIC T. SCHNEIDERMAN                 CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York   Assistant Attorney General
  Counsel for Defendant N.Y.S. Dep't of Health
The Capitol
Albany, NY 12224

DREYER BOYAJIAN LLP                       JOHN J. DOWD, ESQ.
  Counsel for Defendant Magin
75 Columbia Street
Albany, NY 12210

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this employment discrimination action filed by Yohanna

M. Pimentel and Catherine J. Martel ("Plaintiffs") against Michael Magin ("Magin"), and New

York State Department of Health ("DOH") (collectively, "Defendants"), are DOH's motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and Plaintiffs' cross-motion for

leave to file a Third Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2).  (Dkt. Nos. 58,

65).  For the reasons set forth below, Defendant DOH's motion is granted in part and denied in

part and  Plaintiffs' cross-motion is granted in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     Procedural Background

This action was originally commenced on May 25, 2010 against Magin, Center for

Development of Human Services, and SUNY Research Foundation of the State of New York

("Research Foundation").  (*See* Dkt. No. 1 [Compl.].)  Plaintiffs amended their complaint as a

matter of right on October 28, 2010, adding DOH as a defendant.  (*See* Dkt. No. 15 [Am.

Compl.].)  Thereafter, Magin and Research Foundation separately moved to dismiss this action.

Plaintiffs cross moved to amend the complaint.  This Court granted in part and denied in part

each of the motions to dismiss as well as the motion to amend.  (*See* Dkt. No. 42 [MDO].)  By its

Memorandum-Decision and Order, this Court, among other things, noted that Research

Foundation and Center for Development of Human Services are the same entity and directed that

the docket sheet be amended to terminate Center for Development of Human Services as a

defendant.

Thereafter, Plaintiffs filed their Second Amended Complaint.  (*See* Dkt. No. 44.)

Subsequently, DOH filed the current motion for judgment on the pleadings.  In opposition,

Plaintiffs cross move to amend the complaint a third time.  DOH opposes the motion to amend.

Prior to the filing of Plaintiffs' cross motion, a stipulation and order of discontinuance with

prejudice was filed disposing of the claims by Plaintiffs against Defendant Research Foundation.

(*See* Dkt. Nos. 63, 64.)

### B.      Plaintiffs' Second Amended Complaint

The Second Amended Complaint asserts the following claims: (1) a claim by Plaintiffs against Magin for sexual harassment in violation of their right to equal protection of the laws under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) a claim by Pimentel against Magin for *quid pro quo* sexual harassment in violation of her right to equal protection of the laws under the Fourteenth Amendment pursuant to § 1983; (3) a claim by Pimentel against Research Foundation and DOH for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"); (4) a claim by Pimentel against Research Foundation and DOH for retaliation in violation of Title VII and NYHRL; (5) a claim by Martel against Research Foundation and DOH for gender discrimination in violation of NYHRL; and (6) a claim by Martel against Research Foundation and DOH for retaliation in violation of NYHRL.

### C.      DOH's Motion

Generally, in support of its motion for judgment on the pleadings, DOH asserts the following four arguments: (1) Plaintiffs' claims against DOH must be dismissed because Plaintiffs did not have an employment relationship with DOH or with their alleged harasser; (2) Plaintiffs' NYHRL claims against DOH are barred by the doctrine of sovereign immunity; (3) Plaintiffs' Title VII claims against DOH must be dismissed due to the failure to comply with statutory exhaustion requirements; and (4) Plaintiffs' claims must be dismissed due to their failure to timely avail themselves of preventative or remedial recourse.  (*See generally* Dkt. No. 58-1.)

**D.      Plaintiffs' Cross-Motion**

Generally, in support of their cross motion to amend the complaint and in opposition to DOH's motion for judgment on the pleadings, Plaintiffs assert the following arguments: (1) Plaintiffs' motion to amend is timely and does not unfairly prejudice DOH in that it clarifies certain facts and alleges other facts in support of their claims against DOH, and (2) DOH's motion for judgment on the pleadings should be denied because (a) Pimentel properly exhausted her remedies and timely pursued her charge against DOH with the Equal Employment Opportunity Commission ("EEOC"); (b) Plaintiffs are entitled to pursue their NYHRL claim against DOH because they did not have an active case pending before the New York State Division of Human Rights when this action was filed; (c) Plaintiffs may sue DOH as a joint employer; (d) the proposed Third Amended Complaint alleges that DOH knew about, but failed to remedy, the hostile work environment; (e) Magin, the alleged harasser, was Pimentel's supervisor, and the proposed Third Amended Complaint does not establish that DOH is entitled to the *Faragher/Ellerth* affirmative defense; (f) because Magin, the alleged harasser, was Martel's co-worker, DOH is not entitled to the *Faragher/Ellerth* affirmative defense to her claims against it; and (g) Martel has plausibly asserted a claim of retaliation against DOH.  (*See generally* Dkt. No. 65-9.)

Generally, in opposition to Plaintiffs' motion to amend, and in further support of its motion for judgment on the pleadings, DOH asserts that the proposed Third Amended Complaint is futile and cannot prevent judgment on the pleadings in favor of DOH for the following reasons: (1) Plaintiffs have never been employees of DOH and Magin was never Plaintiffs' supervisor; (2) Pimentel did not timely file a charge of discrimination with the EEOC; (3) Plaintiffs did not timely avail themselves of preventative or remedial recourse; and (4) Plaintiffs' NYHRL claims are barred by the doctrine of sovereign immunity.  (*See generally* Dkt. No. 72.)

In their motion papers, the parties have demonstrated an adequate understanding of the factual allegations asserted in Plaintiff's Second Amended Complaint and proposed Third Amended Complaint as well as the legal standards governing those claims. (Dkt. Nos. 58, 65, 72.) As a result, the Court will not recite that information in its entirety in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will do so only where necessary below in Part III of this Decision and Order.

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). In evaluating such motions, district courts must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, No. 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.). In addition, the Court will merely add a few words regarding what documents are considered when a dismissal for failure to state a claim is contemplated.

Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

### B.    Legal Standard Governing Motions for Leave to Amend

A motion for leave to amend a complaint is governed by Rule 15 of the Federal Rules of Civil Procedure, which states that leave to amend should be freely given "when justice so

---

[1]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12(d) if the "matters outside the pleadings" consist of (1) documents attached to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962);

*Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.1993). Pursuant to Fed. R. Civ. P. 15(a)(2),

leave to amend a complaint should be freely given in the absence of any apparent or declared

reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part

of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, or futility of

amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1

Hous.*, 608 F.2d 28, 42 (2d Cir.1979); *Meyer v. First Franklin Loan Servs, Inc.*, No. 08-CV-

1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, No. 98-CV-0374,

2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

### C. Legal Standards Governing Plaintiffs' Claims Against DOH

#### 1. Title VII

Title VII prohibits an employer from "discriminat[ing] against any individual with

respect to his [or her] compensation, terms, conditions, or privileges of employment, because

of," *inter alia*, "such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

2000e–2(a)(1). Thus, by definition, "Title VII protects a limited class of persons from

discrimination." *Kiley v. Am. Socy. for Prevention of Cruelty to Animals*, 296 F. App'x 107, 109

(2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1), (2)). Liability on Title VII claims is limited

to employers, not individuals. *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012),

*abrogated on other grounds by*, *United States v. City of New York*, 717 F.3d 72, 86, n.14 (2d Cir.

2003).

Filing a charge with the EEOC is a jurisdictional prerequisite to commencing a private

civil action under Title VII. *See Morgan v. NYS Attorney Gen.'s Office*, No. 11-CV-9389, 2013

WL 491525, at *6 (S.D.N.Y. Feb. 8, 2013 ) (citing *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir.2012) (citing 42 U.S.C. §§ 2000e–5(e)(1), (f)(1))). "In addition, the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). "Under the continuing violation doctrine, [a] hostile work environment claim is timely as long as one of the events 'contributing to the hostile environment claim' occurred within this 300 day window, even if most of the allegedly discriminatory acts took place earlier." *Barrows v. Seneca Foods Corp.*, 2013 WL 656742, at*1 (2d Cir. Feb. 25, 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S. Ct. 2061 (2002)).

In addition to alleging facts plausibly suggesting she was subjected to a hostile work environment, a plaintiff must also allege facts to plausibly suggest that the conduct which created the hostile environment may be imputed to her employer. *See Shiner v. State Univ. of New York*, No. 11-CV-1024, 2012 WL 5398658, at *4 (W.D.N.Y. Nov. 2, 2012) (citing *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d. Cir.2001)). Employer liability for workplace harassment under Title VII "may depend on the status of the harasser." *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013). The actions of a plaintiff's coworkers will be imputed to the employer only if the employer was "negligent in controlling working conditions." *See id.* In other words, if the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it," it will be liable for the actions of its co-worker employee. *Wiercinski v. Mangia 57, Inc.*, No. 09-CV-4413, 2012 WL 2319142, at *10 (E.D.N.Y. June 19, 2012) (quoting *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)). However, the actions of a plaintiff's supervisor are "automatically imputed to the employer

unless the employer is able to successfully raise an affirmative defense that examines the reasonableness of the conduct of both the employer and the employee." *Shiner*, 2012 WL 5398658, at *4.[2] This defense requires the employer to show that it "exercised reasonable care to prevent and correct any harassing behavior" and that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257 (1998). Where an employer "maintains a policy against sexual harassment and provides a process through which employees can complain about violations of that policy," it will have met the first prong of its affirmative defense. *Joyner v. City of New York*, No. 11-CV-4958, 2012 WL 4833368, at *3 (S.D.N.Y. Oct. 11, 2012). Further, where a plaintiff fails to take advantage of that system until more than a year after the alleged harassment began, and where the offensive conduct ceased once plaintiff reported it, an employer will establish the second prong of its defense. *See Joyner*, 2012 WL 4833368, at *3 (citing *Leopold*, 239 F.3d at 246).

### 2. NYHRL

"Because New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII," those claims may be analyzed in tandem. *Leopold,* 174 F.3d at 264, n.1 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n.4 (2d

---

[2]      Very recently, the Supreme Court held that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim . . . i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 133 S. Ct. 2434  (2013) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257 (1998).

Cir.1995), *abrogated on other grounds by*, *Burlington Indus.,* 524 U.S. 742, 118 S. Ct. 2257).

*See also Salmon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226, n.2 (2d Cir. 2008).

Accordingly, a court's ruling regarding a plaintiff's Title VII claims applies with equal force to

those claims under the NYHRL.  *See Leopold*, 174 F.3d at 264, n.1.

## III.    ANALYSIS

### A.    Whether the Proposed Third Amended Complaint Alleges Facts Plausibly Suggesting an Employer-Employee Relationship Between DOH and Plaintiffs

After carefully considering the matter, the Court answers this question in the affirmative

generally for the reasons stated by Plaintiffs in their memorandum of law.  (Dkt. No. 65-9, at 8-

11 [Pls.' Mem. of Law].)  The Court would add the following analysis.

While "the existence of an employer-employee relationship is a primary element of Title

VII claims" the statute is silent as to the definition of such a relationship.  *Gulino v. New York*

*State Educ. Dep't*, 460 F.3d 361, 370-71 (2d Cir. 2006).  The Supreme Court has instructed that

"when Congress uses the term 'employee' without defining it with precision, courts should

presume that Congress had in mind 'the conventional master-servant relationship as understood

by the common-law agency doctrine.'" *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997)

(quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23, 112 S. Ct. 1344, 1348

(1992) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40, 109 S. Ct.

2166, 2172-73 (1989))).  *See also Gulino*, 460 F.3d at 371.  Courts in the Second Circuit turn to

common-law agency principles to analyze an economic relationship "only in situations that

plausibly approximate an employment relationship."  *Gulino*, 460 F.3d at 372 (quoting

*O'Connor*, 126 F.3d at 115).  A direct employment relationship can only exist under common-

law agency principles where an individual has been hired, meaning that he or she has received

direct or indirect remuneration from the alleged employer. *See id.* (citing *O'Connor*, 126 F.3d at 115; *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999)).

However, an entity may qualify as an employer on a theory of indirect employer liability in certain circumstances. *See Gulino*, 460 F.3d at 372-78. For example, where an entity is a joint employer, it may qualify as an "employer" under Title VII. In a joint employer relationship, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (quoting *Clinton's Ditch Coop. Co. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985)). "[T]here is no single integrated enterprise [in a joint employer relationship.] A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they ... handle certain aspects of their employer-employee relationship jointly." *Id.* (citing *Clinton's Ditch*, 778 F.2d at 137).

Courts in the Second Circuit have confined the joint employer analysis to two corporate contexts: (1) where the plaintiff is an employee of a wholly-owned corporate subsidiary; and (2) where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity. *See Gulino*, 460 F.3d at 378. The "joint employer" theory of liability may include the analysis of factors such as "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" to determine whether an entity qualifies as an employer. *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), *aff'd*, 375 F. App'x 54 (2d Cir. 2010), (quoting *N.L.R.B. v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir.1994)). However, the Court of Appeals for the

11

Second Circuit has yet to fully analyze or describe a test for what constitutes joint employment in the context of Title VII.  See *Arculeo*, 425 F.3d at 199-200, n.7.  The Second Circuit has suggested that the factors to be considered may vary depending on the purpose of the inquiry, citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003), which described the analysis relevant to a joint employment inquiry in the context of the Fair Labor Standards Act. *See id.*

Here, DOH argues that, according to allegations in the proposed Third Amended Complaint, Plaintiffs were hired by Research Foundation, not DOH, and therefore, pursuant to *O'Connor*, DOH cannot be deemed Plaintiffs' employer.  Plaintiffs counter that DOH is a joint employer, citing the seven factor test set forth in *Zheng*.  Applying the *Zheng* test here, the considerations would be (1) whether DOH's premises and equipment were used for the Plaintiffs' work; (2) whether Research Foundation had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which Plaintiffs performed a discrete line-job that was integral to DOH's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which DOH or their agents supervised Plaintiffs' work; and (6) whether Plaintiffs worked exclusively or predominantly for DOH.  *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724-25, 730, 67 S. Ct. 1473)).

In support of its apparent argument that common-law agency principles apply to the exclusion of the joint employer analysis, DOH cites Plaintiffs' allegations that Martel and Pimentel were employed by Research Foundation.  (*See* Dkt. No. 65-2, at ¶¶ 9, 29 [Proposed Third Am. Compl.].)  However, the case upon which DOH relies in support of its argument that

the sole factors of Plaintiffs' hiring and pay by Research Foundation warrant a conclusion that

Plaintiffs are not DOH's employees deals with an individual plaintiff who received no

remuneration for her work. In *O'Connor*, the plaintiff was a student who was placed in an

internship with the defendant by her college as a condition for completing her degree, and for

which she received federal work study funds through her college. *See O'Connor*, 126 F.3d at

116, n.2. There, the Court noted that the work study funds, which were paid to the plaintiff by

her college as opposed to the defendant, did not amount to either "direct or indirect economic

remuneration or the promise thereof" from the defendant. *Id.* By contrast, here, Plaintiffs were

subcontractors of DOH and therefore necessarily received indirect economic remuneration from

DOH in exchange for their work. Accordingly, application of the *Zheng* factors, rather than

common law agency principles, is appropriate here.

Moreover, DOH does not address Plaintiffs' argument that the *Zheng* factors apply in this

case, much less explain why the Plaintiffs' proposed amended pleading does not plausibly

suggest that those factors warrant a conclusion that DOH qualifies as a joint employer. DOH

completely ignores Plaintiffs' allegations that they worked exclusively for DOH, used DOH's

equipment and facilities, were supervised by DOH employees and that DOH employees made

decisions regarding the promotion, hiring, firing, work schedules and salaries of Plaintiffs and

other Research Foundation employees. (*Id.* at ¶¶ 54-70.) While the Court expresses no opinion

as to what the record evidence might or might not show on a motion for summary judgment (or

at trial), the Court is unable to conclude that, liberally construed (as all allegations must be),[3]

---

[3]       See Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Indeed, the Court notes that, generally, the pleadings of civil rights litigants such as Plaintiffs are to be construed with extra liberality in this Circuit. *See Dottolo v. Byrne Dairy, Inc.*, No. 08-CV-0390, 2010 WL 2560551, at *10 & n.21 (N.D.N.Y. June 22, 2010) ("[G]enerally, civil rights litigant such as Plaintiff are to be afforded special solicitude in this Circuit.") (collecting cases).

these factual allegations do not plausibly suggest that DOH was Plaintiffs' joint employer.

For this reason, the Court finds that Plaintiffs' proposed Third Amended Complaint alleges facts plausibly suggesting that an employer-employee relationship exists between Plaintiffs and DOH. Accordingly, DOH's motion for judgment on the pleadings on this basis is denied and Plaintiffs' motion to amend in this regard is granted.

**B.     Whether the Proposed Third Amended Complaint Alleges Facts Plausibly Suggesting That Pimentel Properly Exhausted Her Administrative Remedies and Timely Pursued Her Claims**

After carefully considering the matter, the Court answers this question in the affirmative generally for the reasons stated by Plaintiffs in their memorandum of law. (*See* Dkt. No. 65-9, at 3-7 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

Initially, the Court notes that DOH withdraws its argument that Pimentel failed to properly exhaust her administrative remedies. Plaintiffs have alleged in their proposed Third Amended Complaint that Pimentel filed a charge of discrimination with the EEOC on February 25, 2010, and that on October 18, 2010, she received a right-to-sue letter from the EEOC, which she has submitted in support of her cross-motion to amend. Accordingly, the Court finds that Plaintiffs have alleged facts plausibly suggesting that Pimentel properly exhausted her administrative remedies prior to adding DOH as a defendant to this action in the Amended Complaint.

DOH also argues that Pimentel's Title VII claim is untimely because the Second Amended Complaint "studiously omits dates of particular relevant events" and the proposed Third Amended Complaint "provides no specific date of any incident." (*See* Dkt. No. 58-1, at 12 [Def.'s Mem. of Law]; Dkt. No. 72, at 6 [Def.'s Reply Mem. of Law].) DOH acknowledges Plaintiffs' allegation that, in mid-September 2009, Magin gave Pimentel a copy of digital

recordings which precipitated her complaint against Magin and his expulsion from the workplace.  However, DOH contends that any events that occurred between 2006, the year Pimentel was hired, and early 2009 cannot form the basis of her claims because they occurred more than 300 days prior to the date of her charge of discrimination.

Plaintiffs note that the last event of discrimination occurred in mid-September 2009 when, as is alleged in the proposed Third Amended Complaint, Magin gave Pimentel a thumb drive of himself masturbating and other pornographic images, which clearly took place within the 300-day window.  Plaintiffs point out that various other of Magin's discriminatory acts against Pimentel occurred within this window.  For example, Plaintiffs cite their allegation that Magin began sexually harassing Pimentel within a few months after her employment commenced in December 2006 and that the harassment lasted until three to four months before Magin was placed on leave in September 2009.  (*See* Dkt. No. 65-2, at ¶ 28 [Proposed Third Am. Comp.].)  Specifically, Plaintiffs allege that Magin "touched Pimentel inappropriately by grabbing, patting, and pinching her shoulders and buttocks at least a few times per week."  *Id.* Plaintiffs also allege numerous other specific incidents of harassment by Magin against Pimentel which occurred "regularly" or "on a regular basis" during various times of Pimentel's employment "until" Magin was placed on leave in mid-September 2009.  (*See id.*, ¶¶ 31-35, 41.) Moreover, Plaintiffs argue that events which occurred outside of the 300-day window may be considered since they contributed to the hostile work environment.

As indicated above in Part II.C.1. of this Decision and Order, "[a] hostile work environment claim is timely as long as one of the events 'contributing to the hostile environment claim' occurred within this 300 day window, even if most of the allegedly discriminatory acts took place earlier."  *Barrows*,  2013 WL 656742, at*1 (quoting *Nat'l R.R. Passenger Corp.*, 536

U.S. at 105, 122 S. Ct. 2061).  Plaintiffs have identified several alleged incidents of harassment

by Magin against Pimentel that spanned throughout Pimentel's employment, at least one of

which occurred during the 300-day window.  Accordingly, "the entire time period of the hostile

environment may be considered" when determining liability under Title VII.[4]  *Patterson v. Cnty.*

*of Oneida*, 375 F.3d 206, 220 (2d Cur. 2004) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at

117, 122 S. Ct. 2061).

For these reasons, the proposed Third Amended Complaint alleges facts plausibly

suggesting that Pimentel properly exhausted her administrative remedies and timely pursued her

claims.  Accordingly, DOH's motion for judgment on the pleadings is denied and Plaintiff's

cross motion to amend is granted in this regard.

### C. Whether the Proposed Third Amended Complaint Alleges Facts Plausibly Suggesting the Actions of Magin May Properly Be Imputed to DOH

After carefully considering the matter, the Court answers this question in the affirmative

generally for the reasons stated by Plaintiffs in their memorandum of law.  (*See* Dkt. No. 65-9, at

 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

DOH argues in the first instance that Magin was not a supervisor, but a co-worker of

Plaintiffs and therefore, his acts of discrimination may only be imputed to DOH if, as indicated

in Part II.C.1. of this Decision and Order, DOH "either provided no reasonable avenue for

complaint or knew of the harassment but did nothing about it." *Wiercinski*, 2012 WL 2319142, at

*10 (quoting *Murray*, 57 F.3d at 249).  Alternatively, DOH argues, even if Magin is deemed to

be a supervisor of Plaintiffs', DOH is entitled to judgment on the pleadings on Plaintiffs' claims

---

[4]        To the extent these alleged incidents form the basis of a *quid pro quo* claim,
which constitutes a discrete act, they must have occurred within the 300 day period in order for
that claim to be timely.  *See Carter v. New York*, 310 F. Supp. 2d 468, 475 (N.D.N.Y. 2004).

under the *Faragher/Ellerth* affirmative defense. As indicated in Part II.C.1. of this Decision and Order, actions of a plaintiff's supervisor are automatically imputed to the employer unless the employer is able to successfully raise the affirmative defense that it "exercised reasonable care to prevent and correct any harassing behavior" and that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S. Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S. Ct. 2275. DOH points out that Plaintiffs fail to allege that they made any unsuccessful attempts to take advantage of DOH's policies and procedures for complaining of discrimination or that there was any deficiency of those policies or procedures. Specifically, DOH notes that Plaintiffs allege that after Pimentel complained about Magin, he was suspended. Accordingly, DOH argues, once Pimentel availed herself of DOH's preventative and remedial measures, DOH took action to remove Magin from the workplace.

Plaintiffs point out that nowhere in their pleadings does it indicate that DOH had any policy or procedure for dealing with harassment and that, to the extent Pimentel failed to complain about Magin's harassment until September of 2009, she had credible reasons for doing so. Specifically, Plaintiffs point out their allegation in the proposed Third Amended Complaint that when Martel complained about Magin to Patti Buttino, the office director, in July 2008, Buttino told Martel that she "did not believe that Magin would commit this kind of sexual harassment." (*See* Dkt. No. 65-2, at ¶ 23 [Proposed Third Am. Compl.].) Plaintiffs further allege that neither DOH or Research Foundation took any action to discipline Magin after Martel's complaint, and that as a result, Magin was able to go on to discriminate against Pimentel. *See id.*, at ¶ 26. Further, Plaintiffs allege that there was "widespread knowledge in the workplace about Magin's foot fetish and conduct towards female employees" and that he "had an issue with female employees." *Id.* at ¶¶ 48, 51.

The Court finds that DOH is not entitled to judgment on the pleadings regardless of Magin's status as a co-worker or supervisor of Plaintiffs.[5] First, the Court finds that Plaintiffs allege facts plausibly suggesting that DOH knew of Magin's harassment but failed to do anything about it. Accordingly, even if Magin was not a supervisor, but a co-worker, of Plaintiffs, DOH's motion for judgment on the pleadings must be denied.

If Magin is deemed to be a supervisor of Plaintiffs, because the facts in support of DOH's *Faragher/Ellerth* affirmative defense do not appear on the face of the Second Amended Complaint or the proposed Third Amended Complaint, DOH's motion for judgment on the pleadings must be denied. When a court grants a motion for judgment on the pleadings based on an affirmative defense, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information; and (2) suffice to establish the affirmative defense with certitude." *Canadian St. Regis Band of Mohawk Indians v. New York*, Nos. 82-CV-783, 82-CV-1114, 89-CV-829, 2013 WL 3416499, at *2 (N.D.N.Y. July 8, 2013) (quoting *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir.2008)).

Here, other than the fact of Plaintiffs' complaints, there is nothing in the operative pleading or the proposed amended pleading to indicate that DOH maintained a policy against sexual harassment and provided a process through which employees could complain about violations of that policy. Also, while it is true that Pimentel failed to complain about the

_____

[5] To be sure, it is questionable, based on the pleadings, whether Magin had the authority "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits'" necessary to render him a supervisor for purposes of DOH's vicarious liability under Title VII. *See Vance*, 133 S. Ct. 2434 (quoting *Ellerth*, 524 U.S. at 761, 118 S. Ct. 2257). However, because Plaintiffs allege facts plausibly suggesting that DOH is vicariously liable whether Magin is a co-worker or a supervisor, the Court need not reach the issue at this stage of the litigation.

harassment, which allegedly began "[a] few months" after she began her employment on December 4, 2006, until September of 2009, the proposed Third Amended Complaint includes allegations that, taken as true, could lead a fact finder to believe that it was reasonable for Pimentel to delay filing a complaint. ((*See* Dkt. No. 65-2, at ¶ 28 [Proposed Third Am. Compl.].) Specifically, Plaintiffs allege that Pimentel knew that Martel had previously complained about Magin to no avail and that Magin had made comments to Pimentel that she perceived as threatening and caused her to worry about losing her job.  (*See id.* at ¶¶ 49-50.)  Accordingly, assuming the truth of the allegations in the proposed Third Amended Complaint, Pimentel feared that her complaint of discrimination might not be taken seriously because of the way Martel's complaint was treated by DOH.  *Cf. Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999) (where plaintiff's reasons for not making a complaint of discrimination were not based on a credible fear that her complaint would not be taken seriously or that she would suffer some adverse employment action as a result of filing a complaint, plaintiff did not meet the second prong of the *Faragher/Ellerth* affirmative defense).

For these reasons, the proposed Third Amended Complaint alleges facts plausibly suggesting that the actions of Magin may be imputed to DOH.  Accordingly, DOH's motion for judgment on the pleadings is denied and Plaintiffs' cross motion to amend is granted in this regard.

### D.    Whether Plaintiffs' NYHRL Claims Against DOH Are Barred by the Doctrine of Sovereign Immunity

After carefully considering the matter, the Court answers this question in the affirmative. The Eleventh Amendment bars NYHRL claims against a state agency, such as DOH, and New York has not consented to suit.  *See Amna v. New York State Dep't of Health*, No. 08-CV-2806, 2011 WL 4592787, at *16 (E.D.N.Y. Sept. 30, 2011).  Accordingly, Plaintiff's NYHRL claims

against DOH are barred under the doctrine of sovereign immunity. DOH's motion for judgment on the pleadings is granted in this regard. Plaintiffs' motion to file a Third Amended Complaint is denied to the extent they seek to maintain their NYHRL claims against DOH.

**ACCORDINGLY**, it is

**ORDERED** that Defendant DOH's motion for judgment on the pleadings (Dkt. No. 58) is **GRANTED in part** and **DENIED in part**, and it is further

**ORDERED** that Plaintiffs' motion to amend their Second Amended Complaint (Dkt. No. 65) is **GRANTED in part** and **DENIED in part**, and it is further

**ORDERED** that Plaintiffs' NYHRL claims against Defendant DOH are **DISMISSED**; and it is further

**ORDERED** that, as of the date of the filing of this Decision and Order, the following claims remain **PENDING** in this action:

(1) Plaintiff Martel's hostile-work-environment claim (asserted under the Equal Protection Clause of the Fourteenth Amendment) against Defendant Magin;

(2) Plaintiff Pimentel's *quid pro quo* claim (asserted under the Equal Protection Clause of the Fourteenth Amendment) against Defendant Magin to the extent that it is based on acts occurring after May 25, 2007;

(3) Plaintiff Pimentel's hostile-work-environment claim (asserted under the Equal Protection Clause of the Fourteenth Amendment) against Defendant Magin; and

(4) Plaintiff Pimentel's Title VII claims against Defendant New York State Department of Health; and it is further

**ORDERED** that Plaintiffs shall have **SEVEN (7) DAYS** from the date of this Decision and Order to file a revised signed Third Amended Complaint that omits the claims dismissed, and asserts only the claims permitted, by this Decision and Order.

Dated: August 13, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge